**MULTISERVICE JOINT VENTURE, LLC, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 06–312C.

United States Court of Federal Claims.

Dec. 23, 2008.

Janice Davis, Davis & Steele, Washington, D.C., for Plaintiff.

Matthew H. Solomson, with whom were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER ON DEFENDANT'S MOTION FOR SANCTIONS

WHEELER, Judge.

Before the Court is Defendant's motion for sanctions arising from Plaintiff's alleged spoliation of evidence during the deposition of George W. Tolson, Jr. Mr. Tolson served as the General Manager for Plaintiff, Multiservice Joint Venture, LLC ("Multiservice"), and he oversaw the performance of a janitorial services contract at the United States Naval Academy, Annapolis, Maryland. Multiservice submitted a certified claim to the Navy under the Contract Disputes Act, 41 U.S.C. § 601 *et seq.*, which now is pending before the Court. Defendant filed an Amended Answer and Counterclaim on August 11, 2008, alleging that Multiservice submitted a false and fraudulent claim to the Navy, and thereby violated the False Claims Act, 31 U.S.C. § 3729 *et seq.*, the Forfeiture of Claims Statute, 28 U.S.C. § 2514, and the fraud provisions of the Contract Disputes Act, 28 U.S.C. § 604.

Defendant alleges that, during the deposition of Mr. Tolson, one or more of Plaintiff's representatives attending the deposition, or one of Plaintiff's attorneys, tampered with an exhibit containing handwritten notations made by Mr. Tolson while testifying. The charge is that, during a break in the proceedings, someone from the Plaintiff's side removed the staple from an exhibit and substituted clean pages for annotated pages, thus removing some of Mr. Tolson's handwritten notes. When asked at the conclusion of the deposition to rectify the matter by explaining the disappearance of the staple and the substitution of pages, neither the witness nor Plaintiff's counsel made any effort to correct or explain what had happened. Mr. Tolson refused to answer direct questions from Defendant's counsel inquiring whether all of Mr. Tolson's notations still appeared on the exhibit. Two of Plaintiff's representatives left the deposition with the spoliation issue still pending. Defendant's allegations are serious, and if substantiated, would warrant the Court's imposition of a suitable penalty on the offending party.

The Court has carefully considered Defendant's November 20, 2008 motion, Plaintiff's December 4, 2008 response, and the exhibits that each party attached to its brief. The Court also convened a hearing on December 8, 2008 to receive the sworn testimony of the court reporter, all the attendees at the deposition, a Department of Justice legal secretary, and the representations of counsel. The Court issued an Order on December 11, 2008 directing Defendant to submit *in camera* the original of the unstapled exhibit so the Court could examine it. Defendant provided this document on December 15, 2008, along with additional briefing and attachments for the Court's review. Plaintiff filed a further reply on December 19, 2008.

For the reasons stated below, the Court GRANTS Defendant's motion for sanctions. Although the Court still cannot say with certainty what happened during the break at the deposition, the Court is satisfied that an irregularity occurred for which Plaintiff should be held accountable. Plaintiff's witnesses and counsel were not forthcoming in explaining how the irregularity occurred. Faced with a circumstance that only could be explained by Plaintiff, its witnesses and counsel, while under oath, declined to tell the Court what happened. Accordingly, as a reasonable and appropriate sanction, the Court hereby bars George W. Tolson, Jr. from testifying as a witness for Plaintiff at trial.

As a further sanction, the Court directs Plaintiff's counsel to reimburse Defendant for its reasonable attorneys' fees and costs in preparing and presenting the motion for sanctions. Such reimbursement to Defendant shall be made personally by Plaintiff's counsel, and shall not be passed through to

Plaintiff, Multiservice. Counsel of record bears ultimate responsibility for Plaintiff's failure to provide a full explanation to the Court. Above all, the Court's obligation is "to preserve the integrity of the judicial process and its truth-seeking function." *United Medical Supply Co., Inc. v. United States*, 77 Fed.Cl. 257, 264 (2007) (citations omitted).

## Background

Defendant took the deposition of George W. Tolson, Jr. on October 23, 2008 at the offices of the Department of Justice, 1100 L Street, N.W., Washington, D.C. According to the transcript, the deposition began at 10:16 AM. Def.'s Mot., Ex. B at 2. Ms. Cheryl A. Lord served as court reporter. *Id.* Ms. Lord is a registered professional reporter with 32 years of reporting experience. *Id.*, Ex. C at ¶ 1. Others in attendance were: Matthew Solomson, Defendant's counsel; Janice Davis, Plaintiff's counsel; George Tolson, Sr. and David Tolson, Plaintiff's representatives; and Eric Steele. *Id.*, Ex. B at 3.

The deposition transcript indicates that Mr. Steele, a law partner with Ms. Davis in a firm called Davis & Steele, appeared as co-counsel for Plaintiff. *Id.* However, the District of Columbia Bar, on February 17, 2005, suspended Mr. Steele from practicing law for three years due to serious unethical conduct, with a proviso that he reapply to show, by clear and convincing evidence, that he is fit to resume the practice of law. *Id.*, Ex. A at 21–22. One of the several grounds for Mr. Steele's suspension was that he fabricated a subpoena and submitted it to the D.C. Superior Court to explain why he could not attend a pretrial conference. *Id.* at 11–13. Mr. Steele testified at the Court's December 8, 2008 hearing that he has not reapplied to the D.C. Bar, and thus is still suspended from the practice of law in the District of Columbia. Dec. 8, 2008 Transcript ("Tr.") at 76–77. He states that he was present at Mr. Tolson's deposition only to assist Ms. Davis, not to represent Plaintiff. *Id.* at 77; *see also* Tr. 106–07. Ms. Davis is a member of the bar of this Court, but Mr. Steele is not.

During the deposition, Mr. Solomson asked the court reporter to furnish "GWT Exhibit 4" to the witness. Def.'s Mot., Ex. B at 21. This exhibit was a clean copy of Defendant's Amended Answer and Counterclaim, filed with the Court on August 11, 2008. *Id.* The exhibit consisted of 13 pages, and was stapled in the upper left corner. *Id.*, Ex. C at ¶¶ 6, 7, Ex. F; Tr. 10, 40, 50. Mr. Solomson provided two courtesy copies of this exhibit to Plaintiff, one for Ms. Davis and one for Mr. Steele. Def.'s Mot. at 2; Tr. 91. Mr. Solomson referred the witness to the fact allegations in paragraphs 34 to 61 of the counterclaims (pages 5–10), and provided a pen to the witness to use in writing on the exhibit. Def.'s Mot., Ex. B at 21–22. Mr. Solomson asked Mr. Tolson to review the fact allegations in the referenced paragraphs, and to indicate any allegations that the witness thought were incorrect. *Id.* The following exchange occurred:

[Mr. Solomson] I would ask you to take whatever time you need, but we're going to stay on the record, to read through this from 34 to 61, and if as you read it—through it, you have any information that would lead you to believe that something alleged in the factual background portion is incorrect, please speak up for the record and just tell us what paragraph you're on and let us know your testimony about what fact you think is wrong.

Do you understand what I'm asking you to do?

A. Sure, I do. I do understand.

Q. Okay. Great.

And I'm sorry, Mr. Tolson. Just to be clear: If you simply don't know, there's no reason for you to say anything on the record at all. I'm just looking for you to tell me where you disagree with something and why. If you don't know, that's fine.

A. I understand that.

*Id.*, Ex. B at 22–23.

At this point in the deposition, Mr. Tolson reviewed "GWT Exhibit 4," paragraphs 34 to 61, with the pen provided by Mr. Solomson. The copy of this exhibit provided to the Court with Defendant's motion shows on page 5 the handwritten word "Agree" at the end of paragraphs 34 and 35, check marks on page 6 at the end of paragraphs 36, 37, and 38, check marks on page 7 at the end of paragraphs 40 and 43, no handwriting on

pages 8 and 9, and handwritten underscoring on page 10 under portions of paragraph 61. *Id.,* Ex. F at 5–10. There are no other handwritten markings on the document.

After Mr. Tolson completed his review of "GWT Exhibit 4," the deposition transcript shows a further exchange:

BY MR. SOLOMSON:

Q. Have you had a chance now to look through all those paragraphs?

A. I have.

Q. And are there specific factual allegations here with which you take issue?

A. Yes.

Q. Okay.

A. Page 8.

Q. All right.

A. Item 49.

Q. Paragraph 49.

A. Paragraph 49.

*Id.,* Ex. B at 23. After Mr. Tolson's explanation regarding page 8, paragraph 49, the questioning shifted to his next point of disagreement:

Q. Okay. All right. Let's move on to whatever next paragraph you have there.

A. If we could move to page 10.

Q. Okay.

A. Paragraph 61.

*Id.,* Ex. B at 27. The next relevant exchange occurred after Mr. Tolson completed his explanation of paragraph 61:

Q. Are there any other paragraphs you have any comments about that—any specific facts you have a specific reason to disagree with?

(Pause.)

A. No. I have nothing more.

Q. Okay. Now, I've noticed that you marked up the exhibit with some comments. I just want to confirm that that's in blue ink and that's all your handwriting on there; is that correct?

A. That is correct.

Q. And there was no other handwriting on that exhibit before you started writing on it; is that correct?

A. That is correct.

*Id.,* Ex. B at 27–28. At the conclusion of Mr. Solomson's examination, Ms. Davis requested a five-minute break, indicating that she had a few additional questions. *Id.,* Ex. B at 32.

Following the break, and after Ms. Davis had asked the witness her follow-up questions, Mr. Solomson noticed that "GWT Exhibit 4" had been altered. According to Defendant's motion, "[s]everal pages that had comprised the original, stapled exhibit appeared to have been replaced by other pages without the deponent's annotations on them." Def.'s Mot. at 4. The motion further states that "Mr. Solomson demanded that plaintiff's counsel show him the intact, stapled courtesy copies of Exhibit GWT 4 that he had provided to them," but that "Plaintiff's counsel failed to do so." *Id.* With all deposition attendees still in the room, Mr. Solomson then asked "what happened to the pages that had been marked with the phrase 'No info,' " but nobody responded. *Id.* Mr. Solomson placed the following statement on the record:

MR SOLOMSON: Let's go back on the record.

For the record, we had closed out the deposition following opposing counsel, Ms. Davis, asking a series of questions to the deponent, Mr. Tolson, following which all of the exhibits were about to be handed to the court reporter in this deposition. But then I noticed that the document number 4, exhibit number 4, which previously had been marked for purposes of the examination and was stapled at the time I handed the document and during the questioning of the witness is now unstapled.

And from—as far as I can tell, although there were a series of handwritten notes from the witness on the document, those pages appear to have been removed, and other pages appear to have been substituted that do not have those markings. Now, as it stands, page 5 has 2 words written on the page with respect to paragraph 34 and 35. The witness wrote the word ["]agree["].

There are no other words on the remaining pages despite the fact that I recall having seen the witness write "no info" next to many of the paragraphs, several.

And I would ask the witness to state whether he recalls having written the words ["]no info["], and remind the witness that he remains under oath.

*Id.,* Ex. B at 34–35. Following this statement, Mr. Solomon further examined the witness:

FURTHER EXAMINATION BY COUNSEL FOR DEFENDANT

BY MR. SOLOMSON:

Q. Sir, do you recall having written the words ["]no info["] next to some of those paragraphs?

A. May I see the document?

Q. You may. But it's a question. It's a simple question.

Do you recall having written those words next to some of the paragraphs, "no info"?

A. I'd like to review the document first.

(Pause.)

MR. SOLOMSON: I want the record to reflect that the witness is reviewing an unstapled version of exhibit 4.

(Pause.)

A. This appears to be the document that I worked on—that I worked from.

BY MR. SOLOMSON:

Q. I'm going to ask you the question: Do you recall having written the words ["]no info["] next to some of those paragraphs?

(Pause.)

MR. SOLOMSON: I want the record to reflect that this question is taking a long time to answer.

BY MR. SOLOMSON:

Q. It is a simple yes or no, and you just wrote on it within the hour.

You don't remember writing the words ["]no info["]? I sat here looking at you when you wrote that.

(Pause.)

A. I made—I made several markings of this document in the pages that you told me to review and the pages that I remember reviewing. I believe that I see that—I see the markings that I made.

Q. Do you recall writing the phrase ["]no info["] next to some of those paragraphs?

MS. DAVIS: I believe the witness has asked and answered.

MR. SOLOMSON: No, he has not answered the question. It's a yes-or-no question.

A. My answer to your question is assertively the same.

You asked me to look at several paragraphs in this document, and you asked me to mark it up, and this is the document that I received. And I believe I saw the doc—the markings that I made.

*Id.,* Ex. B at 35–38.

An additional recess then occurred, after which Ms. Davis indicated that Mr. Steele and Mr. David Tolson had left the deposition and the building. Def.'s Mot. at 5. Mr. Solomson went on the record again to state the Government's position:

Our position is that the government handed Mr. Tolson, the deponent, an exhibit marked GWT 4. It is the defendant's amended answer and counterclaims. When we handed [it] to him, it was stapled and it was clean, that is, there were no markings in pen on any of the pages. I handed the witness a blue pen to mark the counterclaim as he saw fit.

I saw the witness mark several of the paragraphs with checks or the word ["]agree["], and at least—on more than 2 times write the phrase ["]no info["] next to the paragraph. When we went to hand—when the government went to hand the full set of exhibits back to the court reporter, counsel for the government noticed that exhibit 4 had been unstapled, proceeded to check each page to confirm that they were all there, and it appears that some of the pages have been swapped out because pages where I saw the witness mark the phrase ["]no info["] no longer appears on the page. And it appears as if a substituted page has been inserted therein.

I asked the witness several times if he recalled seeing—writing the phrase ["]no info["] even if it didn't appear on the copy in front of him, and he refused to answer

the question. It was a yes-or-no question. Many minutes—or at least half a minute passed before he would even answer the question at all.

And I would like to give opposing counsel one last chance to put those pieces of paper out on the table that have the correct markings on them.

*Id.*, Ex. B at 38–40. Ms. Davis responded to Mr. Solomson's position by stating:

MS. DAVIS: I must say, I have absolutely no idea what counsel is talking about.

In fact, the—my client looked at the defendant's amended answer and counterclaims and has stated that it is—and we do see markings on these pages. I did not see specific markings as I was listening to the testimony.

There were many places where he has "agree" and has underlined, and he has already testified that this appears to be exactly what he had seen earlier. Now, that is—that's my position.

*Id.*, Ex. B at 40. A few moments later, Ms. Davis added "I will say for the record that I did not and I did not see anyone unstaple it," and "I don't understand what you're talking about." *Id.*, Ex. B at 41. Mr. Solomson asked the witness if he unstapled the document, and Mr. Tolson answered "I did not." *Id.*, Ex. B at 41–42. The deposition concluded at 11:47 AM. *Id.*, Ex. B at 42.

The events of the break during which the tampering with the exhibit apparently occurred are sharply disputed. At Defendant's request, the court reporter, Ms. Lord, furnished a declaration to Defendant's counsel one day after the deposition. Def.'s Mot., Ex. C. Ms. Lord's declaration states in pertinent part:

10. After Mr. Solomson finished his examination of the deponent, Ms. Davis asked for a five-minute break, prior to asking the deponent a few follow-up questions.

11. During that break, I saw Ms. Davis leave the deposition room with the official, marked exhibits. Ms. Davis asked to be shown where the restroom is.

12. The deponent did not leave the room. The other attendees left the room during the break. I was in the deposition room the entire time.

13. At some point, the exhibits were returned to the table in front of the witness.

*Id.*, Ex. C ¶¶ 10–13. A Department of Justice secretary, Ms. Estelle Brown, testified at the December 8, 2008 hearing that her work station is just outside the conference room where the deposition took place, and that she observed Ms. Davis speaking with another person at the conference room door at the beginning of the break. Tr. 27. Ms. Brown stated that Ms. Davis had "a folder" with her. *Id.* Ms. Brown showed Ms. Davis to the restroom during the break, waited for Ms. Davis to exit the restroom, and then escorted her back to the conference room. Tr. 27, 34.

Contradicting Ms. Lord and Ms. Brown, Plaintiff's representatives stated in their December declarations and in testimony at the December 8, 2008 hearing that none of them except Ms. Davis left the conference room, and that Ms. Davis did not take the deposition exhibits with her. Pl.'s Opp., Ex. D, E, F, G; Tr. 42–43, 65–66, 73–74, 80, 81. Mr. Steele states that he reviewed the deposition exhibits in the conference room, and that "I closely examined the deposition exhibits for completeness and checked them against the courtesy copies." Pl.'s Opp., Ex. D, ¶ 8; *see also* Tr. 82–83. Defendant's counsel, Mr. Solomson, went to his office to review e-mail during the break, and did not observe the actions of any of the deposition attendees. Def.'s Mot. at 3.

On October 30, 2008, Defendant provided a copy of Ms. Lord's declaration to Ms. Davis, and asked Ms. Davis to return the removed pages immediately. *Id.*, Ex. D. In response, Ms. Davis stated on October 31, 2008 that her "office does not possess any of the deposition exhibits or any portions thereof" with the exception of "the intact courtesy copies of said exhibits." *Id.*, Ex. E. Ms. Davis denied moving the exhibits from the deposition room and stated that Ms. Lord "is lying, mistaken or both." *Id.*

During the December 8, 2008 hearing, the Court inquired of witnesses and counsel if

they knew how the staple had been removed from GWT Exhibit 4. None of them provided any explanation. However, there is no dispute that the exhibit had been stapled originally, but was unstapled after the break. The deponent, George W. Tolson, Jr., conceded that he wrote the words "no info" next to some of the paragraphs on exhibit 4, and could not explain why those markings no longer appear on the exhibit. Tr. 59. Plaintiff's counsel apparently did not offer to produce the courtesy copies of exhibit 4 at the end of the deposition, ostensibly because they now contained privileged notations of counsel. *See* Tr. 14, 87.

Toward the end of the December 8, 2008 hearing, the Court offered Defendant the opportunity to have the deponent, George Tolson, Jr., repeat the exercise with GWT Exhibit 4 under the Court's supervision, but Defendant's counsel respectfully declined. Tr. 95–96.

### Discussion

A. *Legal Principles Regarding Spoliation of Evidence and Sanctions*

■ Spoliation is " 'the destruction or significant alteration of evidence, or failure to preserve properly for another's use as evidence in pending or reasonably foreseeable litigation.' " *United Medical,* 77 Fed.Cl. at 263 (quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999)). The Court further observed that "[s]poliation may result in a variety of sanctions, with 'the oldest and most venerable remedy' being an 'adverse inference,' under which the finder of fact may infer that the destroyed evidence would have been favorable to the opposing side." *United Medical,* 77 Fed.Cl. at 263 (quoting Jonathan Judge, "Reconsidering Spoliation, Common–Sense Alternatives to the Spoliation Tort," 2001 *Wis. L.Rev.* 441, 444 (2001)).

Many courts, including the U.S. Supreme Court, the U.S. Court of Appeals for the Federal Circuit, and the U.S. Court of Federal Claims, have held that "[a]ll judicial bodies inherently have the power to sanction parties, or their attorneys, for failure to conform to their rules or to respect their dignity, or for unnecessarily impeding the tribunals' business." *Tecom, Inc. v. United States,* 2006 WL 5616336, \*5 (Fed.Cl. May 4, 2006); *see also In re Bailey,* 182 F.3d 860, 864, 864 n. 4 (Fed.Cir.1999) (citing *inter alia Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), and explaining that "[t]he United States Supreme Court and federal courts of appeals have repeatedly recognized that regulation of attorney behavior is an inherent power of any court of law and falls within the discretion of such court").

This Court's inherent authority to enter sanctions is embodied in Rule 11 of the Rules of the Court of Federal Claims ("RCFC") (requiring a reasonable inquiry into statements alleged in papers filed), RCFC 16(f) (authorizing sanctions for violations of pretrial orders), RCFC 37 (authorizing sanctions for failure to cooperate during discovery), and 28 U.S.C. § 1927 (allowing the Court to impose costs upon any attorney who "multiplies the proceedings in any case unreasonably and vexatiously."). *Tecom, Inc.,* 2006 WL 5616336 at \*5; *see also Precision Pine and Timber, Inc. v. United States,* 2001 WL 1819224, \*4 (Fed.Cl. Mar.6, 2001) ("The Court does not merely have the inherent authority to sanction conduct designed to harm a party, but also to sanction conduct that delays and disrupts the judicial process.").

■ In the present case, the Court is authorized to consider the imposition of sanctions under its inherent power, RCFC 37, and 28 U.S.C. § 1927. Although the language of RCFC 37(b) would suggest that a violation of a judicial order is necessary before imposing sanctions, "a formal, written order is not required, where a litigant engages in abusive litigation practices." *Dotson v. Bravo,* 202 F.R.D. 559, 570 n. 68 (N.D.Ill.2001) *aff'd* 321 F.3d 663 (7th Cir. 2003). The provisions of 28 U.S.C. § 1927 require "attorneys to personally reimburse costs and fees incurred by an opposing party when counsel's conduct multiplies the proceedings in an improper way." *Books Are Fun, Ltd. v. Rosebrough,* 239 F.R.D. 532, 543 (S.D.Iowa 2007) (citing *Clark v. United Parcel Serv., Inc.,* 460 F.3d 1004, 1011 (8th Cir. 2006)). Sanctions are particularly appropriate "where a party intentionally destroys relevant evidence." *Id.* at 554 (citing *Stevenson*

*v. Union Pac. R. Co.,* 354 F.3d 739, 746–51 (8th Cir.2004)).

### B. *Analysis of Record and Applicable Sanctions*

■ Based upon the record here, the Court is satisfied that GWT Exhibit 4 was stapled in the upper left corner when Mr. Solomson asked the court reporter, Ms. Lord, to provide the exhibit to George Tolson, Jr. The Court also is satisfied that Mr. Tolson made handwritten notations on pages 5–10 of the exhibit, including the words "no info" next to at least two paragraphs. Mr. Solomson saw the witness write "no info" and Mr. Tolson agreed at the Court's December 8, 2008 hearing that he wrote "no info" in at least two places. Mr. Tolson must have written those words on pages 8 or 9, because those are the only clean pages that are now included in the exhibit at pages 5–10.

The Court further is persuaded that, following the break after Mr. Solomson had completed his examination, GWT Exhibit 4 had been unstapled, and that clean copies of pages 8 or 9, or perhaps both, had been substituted for pages containing Mr. Tolson's handwritten notations. In addition to the unexplained disappearance of the "no info" notations, the Court is troubled about notations relating to paragraph 49. As seen on pages 5, 6, 7, and 10, the witness employed a method of making notations next to paragraphs upon which he wished to comment. Given that paragraph 49 is one of the factual allegations contested by Mr. Tolson, and that paragraph 49 is on page 8 of the exhibit, it is very likely that Mr. Tolson made notations about paragraph 49 which no longer exist. It is simply not plausible that Mr. Tolson made no markings on pages 8 and 9, as currently appears.

In assessing how the apparent tampering of GWT Exhibit 4 occurred, the Court places responsibility squarely on Plaintiff and Plaintiff's counsel to provide an explanation. Defendant's counsel was not even in the conference room when the document alteration occurred, and did not have access to the deposition exhibits during the break. When asked at the deposition to explain what had occurred, both the witness and Plaintiff's counsel failed to cooperate. Mr. Tolson refused to answer simple questions about whether he wrote "no info" on the document, and Plaintiff's counsel became combative and unhelpful. If a truly clerical error of some type had occurred, a prudent lawyer would have made some effort to determine what had happened. It is no answer to say that Plaintiff's courtesy copies now contained privileged notes, as counsel surely could have examined the copies personally and demonstrated whether something had gone awry. The conduct of Plaintiff and its counsel was more in keeping with an intentional cover up, rather than a good faith effort to correct and explain. Indeed, Mr. Steele and Mr. David Tolson left the deposition before proceedings were concluded, rather than trying to assist in any correction or explanation.

In resolving the contradictions in testimony, the Court finds most credible the declaration and testimony of the court reporter, Ms. Cheryl Lord. She prepared a declaration within one day after the deposition had been completed, while events were fresh in her mind, and her sworn testimony at the Court's December 8, 2008 hearing was materially the same as in her declaration. The Court can see no reason why Ms. Lord would provide anything other than completely truthful information, and summarily rejects Ms. Davis' assertion that Ms. Lord must have been "mistaken" or "lying." Def.'s Mot., Ex. E. The Court also finds the testimony of Ms. Estelle Brown highly credible, in testifying about her observations of Ms. Davis during the break, and her escorting of Ms. Davis to the restroom.

In evaluating the declarations and testimony of Plaintiff's representatives, the Court notes most significantly that Plaintiff has failed to offer any explanation for the alteration of GWT Exhibit 4. The alteration could only have been done by Plaintiff's representatives or Plaintiff's counsel, and yet no explanation has been provided. Even if Plaintiff's representatives stayed in the conference room during the break, as they assert, they still are the only persons who would know what happened to alter the exhibit, and they have not provided any explanation. Plain-

tiff's conduct is an affront to the Court, and cannot escape unpunished.

 Weighing the appropriate sanctions to apply, the Court declines to draw any adverse inference against Plaintiff that might lie from the disappearance of Mr. Tolson's notes. Without knowing exactly what Mr. Tolson's notations may have said, it is difficult to define what an adverse inference should be. The document itself, Defendant's Amended Answer and Counterclaim, was not destroyed, but only the witness's notations. The better approach, especially under the circumstances here, is to bar Mr. George Tolson, Jr. from testifying on behalf of Plaintiff in this case. The Court is convinced that Mr. Tolson knew what had happened to the document, but declined to say what he knew. Rather than attempting to define at trial whether Mr. Tolson might be testifying in support of Plaintiff's claim or in defense to Defendant's counterclaim, the simpler and more rational approach is to rule that Mr. Tolson will not testify, unless called by Defendant.

As allowed by RCFC 37 and 28 U.S.C. § 1927, Plaintiff's counsel shall pay Defendant's reasonable attorneys' fees and costs incurred in preparing and presenting the motion for sanctions, and in taking George W. Tolson, Jr.'s deposition. To the extent that uncertainty exists regarding the identity of the person(s) who actually altered GWT Exhibit 4, Plaintiff's counsel of record ultimately is responsible to the Court for Plaintiff's conduct in these proceedings. Plaintiff's counsel shall personally reimburse Defendant for its reasonable fees and costs, and shall not require Multiservice or its principals or employees to pay any portion of counsel's liability.

### Conclusion

Based upon the foregoing, Defendant's November 20, 2008 motion for sanctions is GRANTED. George W. Tolson, Jr. is barred from testifying at trial on behalf of Plaintiff. Defendant, however, may call Mr. Tolson as a witness for the Government if it wishes. Defendant may apply for its attorneys' fees and costs through an appropriate submission to the Court, to be filed on or before January 15, 2009. Plaintiff may respond to Defendant's application for fees and costs within 14 days, on or before January 29, 2009, if Plaintiff wishes to challenge any portion of Defendant's application, or if there are any mitigating factors that Plaintiff would like the Court to consider.

IT IS SO ORDERED.